# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLENE JOHNSON** | * | |
| v. | * | Civil Action No. CCB-17-0124 |
| **EDWARD D. JONES & CO., L.P.** | * | |

## MEMORANDUM

This is an employment discrimination case. On January 13, 2017, the plaintiff, Charlene Johnson, sued the defendant, Edward D. Jones & Company, L.P. ("Edward Jones"), seeking compensatory and punitive damages as well as attorney's fees for Edward Jones' alleged violations of Title VII of the Civil Rights Act of 1964. This matter is before the court on Edward Jones' motion for summary judgment. For the reasons stated below, the court will grant the motion.

## Factual and Procedural Background

This case has a lengthy factual and procedural history, only the relevant portions of which will be recited here. Ms. Johnson is an African-American woman. On December 19, 2005, Edward Jones hired Ms. Johnson as a branch office assistant ("BOA") trainee at its Prince Frederick, Maryland branch office. On June 1, 2006, Edward Jones promoted Ms. Johnson to a BOA and, in June 2011, to a senior BOA.[1] Ms. Johnson reported to Jeffrey Quesenberry, the branch office's financial advisor. Ms. Johnson worked with Duffy Mavilia, a white BOA at the branch office.

From January to November 2015, Ms. Johnson observed scratches on her vehicle on four separate occasions while it was parked during work hours. Upon discovering the first scratches

---

[1] Throughout her pleadings, Ms. Johnson provided varying dates regarding her hiring and promotion. The court need not resolve these inconsistencies, as it is uncontested that Ms. Johnson was a senior BOA at the time of the incidents in question.

in January 2015, Ms. Johnson notified Mr. Quesenberry of the damage. Ms. Johnson also informed Mr. Quesenberry that it appeared that the scratches had been painted over in red paint, and showed him red fingernail polish that was sitting on Ms. Mavilia's desk.

Ms. Johnson observed scratches on her car on three additional occasions in 2015, prompting Mr. Quesenberry to suggest that Ms. Johnson install security cameras to monitor the vehicle during work hours.

On November 20, 2015, after again discovering scratches on her vehicle, Ms. Johnson called Edward Jones' global security department. During the call, Ms. Johnson stated that she suspected that Ms. Mavilia was scratching the vehicle and that she thus was seeking advice for securing the vehicle.[2] Ms. Johnson reported that Ms. Mavilia at times would suggest Ms. Johnson check her vehicle, and that she had not reported the incidents to the police. After Ms. Johnson identified Ms. Mavilia as the suspected vandal, Ms. Johnson was asked, "[i]s this another BOA that's doing this?" to which she responded "[y]es." ECF 30–4 at p. 37.

That same day, Ms. Johnson spoke by telephone with Donna Hinton and Mark Henke, from Edward Jones' associate relations[3] ("AR") and global security departments, respectively, regarding her suspicions. Ms. Hinton assigned Colleen Welch, a senior resolutions specialist who reports to Ms. Hinton, to follow up on Ms. Johnson's concerns.

Ms. Welch called Ms. Johnson on November 30, 2015, at which time Ms. Johnson expressed that she had not intended to involve AR and requested that AR cease its investigation. Ms. Welch informed Ms. Johnson that AR's involvement was necessary due to the seriousness of Ms. Johnson's allegations.

---

[2] Also in 2015, Ms. Johnson and Ms. Mavilia allegedly had two disagreements due to Ms. Mavilia making racially-charged comments, one regarding the murder of Freddie Gray and the other regarding Ms. Mavilia's father's negative view of interracial relationships. Ms. Johnson reported both incidents to Mr. Quesenberry.

[3] Edward Jones refers to human resources as associate relations.

2

On December 3, 2015, Ms. Johnson repeated, this time to Mr. Quesenberry, that she did not want AR to continue in its investigation. The following day, Ms. Welch informed Mr. Quesenberry that she was concerned regarding Ms. Johnson's requests to terminate the investigation.

During a January 8, 2016, conference call with Ms. Johnson and Mr. Quesenberry, Ms. Welch noted her concerns with Ms. Johnson's apparent wavering in her accusations against Ms. Mavilia, signified by Ms. Johnson's requests to terminate the investigation. Ms. Johnson reiterated her suspicion of Ms. Mavilia.

During a January 21, 2016, meeting with Ms. Welch, Mr. Quesenberry, and Ms. Mavilia, Ms. Johnson wavered significantly on the frequency of the damage to her vehicle, and clarified that, while she was suspicious of Ms. Mavilia, she did not wish to accuse her of vandalism and had never accused her of such. Ms. Mavilia denied damaging Ms. Johnson's car. Ms. Welch reminded Ms. Johnson that she had affirmed that another BOA was damaging her vehicle during the November 20, 2015, call with global security. Nonetheless, Ms. Johnson maintained that she had never accused Ms. Mavilia of vandalizing the vehicle.

On January 28, 2016, Ms. Welch notified Ms. Johnson that she was at risk of termination. Ms. Welch indicated that she believed that Ms. Johnson had been untruthful during the investigation, due in large part to Ms. Johnson's denial of ever having accused Ms. Mavilia.

On January 29, 2016, Ms. Johnson provided a letter to Ms. Welch, Mr. Quesenberry, and AR generally, wherein Ms. Johnson indicated that she felt her race was influencing the investigation into her allegations. Later that same day, Ms. Welch confirmed Ms. Johnson's November 20, 2015, accusation during a conference call with Mr. Quesenberry and Ms. Johnson. Ms. Johnson disagreed with Ms. Welch's assessment that Ms. Johnson had accused Ms. Mavilia

of damaging her vehicle. At the end of the meeting, Ms. Welch informed Ms. Johnson that she did not credit Ms. Johnson's claims due to, *inter alia*, Ms. Johnson's attempts to retract her accusation and suspicions, as well as Ms. Welch's conclusion that the scratches looked like normal wear and tear rather than intentional damage and Ms. Johnson's failure to provide to AR supporting documentation regarding the scratches as had been requested previously.

On February 5, 2016, Edward Jones terminated Ms. Johnson. Ms. Welch made the ultimate decision to terminate Ms. Johnson and informed her of that decision. Ms. Johnson filed a claim with the Equal Employment Opportunity Commission, which was dismissed. ECF 30–19 at p. 2; ECF 30–20 at pp. 2–3.

On January 19, 2017, Ms. Johnson filed her complaint against Edward Jones in this court, alleging that Edward Jones, in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act, 1) terminated her due to her race, and 2) retaliated against her for engaging in protected activity.[4] Ms. Johnson filed her amended complaint on March 10, 2017, and Edward Jones filed its answer on June 6, 2017.

On March 7, 2018, Edward Jones filed its motion for summary judgment, which has been fully briefed and will be granted as explained below.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*,

---

[4] Ms. Johnson's complaint included other allegations of misconduct by Edward Jones, which the court dismissed on May 23, 2017.

4

673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### i. Termination

Title VII prohibits an employer from terminating an employee on the basis of the employee's race. 42 U.S.C. § 2000e-2(a).[5] Absent direct evidence of discrimination, to establish a prima facie claim of discriminatory termination under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff establishes a prima

---

[5] Ms. Johnson's state claims derive from the Maryland analog to Title VII, which involves the same prima facie and burden-shifting frameworks. Given the analogous statutes, and considering the lack of material facts in dispute as discussed *infra*, the court will not analyze separately Ms. Johnson's claims under state law.

5

facie case, the burden of proof shifts to the defendant to "articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant provides a non-discriminatory reason for the difference in treatment, the plaintiff must then establish that the proffered reason is pretext by proving "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trustees of the University of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citing *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (quotation omitted)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (if plaintiffs establish a prima facie case and show the proffered explanation to be false, a jury may infer discrimination was the real reason unless no rational factfinder could conclude that the action was discriminatory (internal citation and quotation omitted)). The Fourth Circuit has cautioned district courts from becoming overly mired in the *McDonnell Douglas* framework. *See Merritt*, 601 F.3d 289, 294–95 (cautioning trial courts from becoming "so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the 'ultimate question of discrimination *vel non*.'" (internal citation omitted)).

Assuming without deciding that Ms. Johnson has established a prima facie case for discriminatory termination,[6] Ms. Johnson has pleaded no facts which could prove that Edward

---

[6] While the court assumes, in the interest of brevity, that Ms. Johnson could establish a prima facie case for discriminatory termination, it has serious doubts about her practical ability to do so. The prima facie case requires a plaintiff to identify comparable employees who 1) are not members of the same protected class, 2) engaged in similar misconduct, but 3) did not face the same severe consequences. *Lightner v. City of Wilmington*, 545 F.3d 260, 264–65 (4th Cir. 2008) (internal citation omitted). While Ms. Johnson identified the workplace misconduct of three co-workers, including Ms. Mavilia, none of the prospective comparators were alleged to have lied to AR in an investigation. *Id.* at 265 ("[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful" (internal citation omitted)). Furthermore, Edward Jones identified at least one white BOA that was terminated solely for lying to AR during an investigation. ECF 30-23 at p. 8.

Jones' proffered reason for firing her was false and was pretext for racial discrimination.

### a. Edward Jones has provided a non-discriminatory reason for terminating Ms. Johnson.

Edward Jones has established that Ms. Welch decided to terminate Ms. Johnson based on Ms. Welch's conclusion that Ms. Johnson had lied to AR during its investigation. Specifically, Ms. Welch concluded that Ms. Johnson had, at various junctures during the investigation, vacillated between accusing Ms. Mavilia of vandalizing her vehicle and refusing to accuse anyone.[7] Furthermore, Ms. Welch's notes from the investigation explicitly detail her concerns and the basis for her decision to terminate Ms. Johnson, including Ms. Johnson's varying claims about the duration and severity of the vandalism as well as Ms. Johnson's ever-changing accusations against Ms. Mavilia.

Ms. Welch noted her concern regarding this vacillation several times, including during the January 21, 2016, meeting when Ms. Welch reminded Ms. Johnson of her November 20, 2015, affirmance that Ms. Mavilia was scratching her car. This concern, which evolved into the basis for Ms. Welch's decision to terminate Ms. Johnson, is facially non-discriminatory.

### b. Ms. Johnson has not established that Edward Jones' reason for firing her is pretext for discrimination.

Ms. Johnson has not alleged any disputed facts which could show that Edward Jones' reason for firing her was pretextual. In an attempt to show that the proffered reason was false, Ms. Johnson argued that Ms. Welch had no basis to conclude that Ms. Johnson was being untruthful because Ms. Johnson's claims were consistent throughout the investigation. That

---

[7] Ultimately, it appears that Ms. Welch's conclusion turned on a persistent misunderstanding between Ms. Johnson and Ms. Welch about the meaning of "accuse." Based on their respective usage, it seems that Ms. Welch classified Ms. Johnson's repeated articulated suspicions of Ms. Mavilia as accusations, while Ms. Johnson did not. Thus, when Ms. Johnson alternated between saying that she did not want to accuse anyone and that she suspected Ms. Mavilia, Ms. Welch concluded that the two assertions were incongruous, and that Ms. Johnson was being untruthful.

7

simply is not the case. Ms. Johnson's claims were not consistent even for the duration of one meeting. During the January 21, 2016, meeting, Ms. Johnson's claims about the scratching shifted perceptibly. She first claimed that the vehicle was being scratched on a daily basis. Then, when questioned by Ms. Welch, Ms. Johnson claimed it was being scratched every week, and after further questioning, she ultimately claimed the scratching was periodic. ECF 30–7 at p.6.

Ms. Johnson did not argue that the court should disregard Ms. Welch's notes from the investigation, instead arguing that Ms. Welch's conclusion that Ms. Johnson had been untruthful could not have been reasonably drawn from the facts. The court disagrees. While Ms. Welch's conclusion may not be one that every person would have reached, that is not the standard here. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (noting that the court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions" (internal citation and quotation omitted)).

Rather, Ms. Johnson must have alleged facts showing that she would be able to prove that the proffered reason is false, which she has not done. *See Adams*, 640 F.3d at 560. Ms. Welch documented her concerns with Ms. Johnson's behavior, and informed Ms. Johnson of the concerns surrounding her truthfulness as early as January 8, 2016. Ms. Johnson may continue to disagree with the conclusion, but that does not prove her case, given that Edward Jones clearly has established its reasons for terminating Ms. Johnson, and has provided extensive documentation to that end. Ms. Johnson did not claim that Edward Jones' documents were falsified or otherwise unrepresentative of Ms. Welch's investigation, nor does she identify any evidence that suggests another reason for her termination.

Finally, Ms. Johnson has provided no evidence that her race was in any way a factor in Edward Jones' decision to terminate her. Ms. Johnson accurately asserts that a plaintiff does not

need to provide evidence that race was a factor in the decision if the factfinder could conclude that the employer's justification was false, unless "no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. As discussed above, however, Ms. Johnson has not provided any evidence that Edward Jones' proffered reason is false, and Edward Jones has proven that its proffered reason was based on the results of its investigation. Furthermore, Ms. Johnson has made no claim that either Ms. Welch or Mr. Quesenberry, the two individuals most involved in the decision to terminate Ms. Johnson,[8] ever engaged in racist behavior or speech or that her termination was otherwise influenced by her race. In sum, there is no factual dispute that Edward Jones has established that it had a non-discriminatory, non-pretextual reason for terminating Ms. Johnson.

### ii. Retaliation

To establish a prima facie case for retaliation under Title VII, a plaintiff must demonstrate that 1) she engaged in protected activity; 2) her employer took adverse employment action against her; and 3) a causal connection existed between the protected activity and the adverse action. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal citation omitted). The burden then shifts to the defendant to provide a non-retaliatory reason for the adverse employment action. *Id.*

If the defendant provides such a reason, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for retaliation. *Id.* Ultimately, the plaintiff must prove that her protected activity was a "but-for cause" of her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Foster*, 787 F.3d at 252 (finding that *Nassar* did not alter the *McDonnell Douglas* retaliation framework, given that "the *McDonnell Douglas*

---

[8] While Mr. Quesenberry was involved throughout AR's investigation, the authority to terminate Ms. Johnson was solely Ms. Welch's.

framework has long required proof at the pretext stage that retaliation was a but-for cause" of the adverse employment action).

Assuming without deciding that Ms. Johnson could have established a prima facie case of retaliation, Edward Jones has proffered a valid basis for terminating Ms. Johnson. Ms. Johnson claimed the proffered reason was pretext and that she was terminated as retaliation for the letter she submitted to AR on January 29, 2016. Given the sequence of events recited above, it is apparent that was not the case.

Ms. Welch notified Ms. Johnson about her concerns regarding Ms. Johnson's truthfulness as early as January 8, 2016, and she further informed Ms. Johnson of the possibility of termination on January 28, 2016, one day *before* Ms. Johnson submitted her letter to AR alleging her race was influencing how AR handled the investigation. While Edward Jones did not contest that Ms. Johnson's submission of her letter to AR was a protected activity, it fairly noted that mere temporal proximity, absent other evidence, does not establish that retaliation was the but-for cause of Ms. Johnson's termination. *See Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 660 (5th Cir. 2012) (holding that, on its own, temporal proximity cannot establish but-for causation) (internal citation omitted), *cert denied*, 568 U.S. 817 (2012); *see also Staley v. Gruenberg*, 575 Fed.Appx. 153, 156 (4th Cir. 2014).[9] Ms. Johnson has presented no other facts which would indicate that Ms. Welch's decision to terminate her was motivated by retaliatory animus.[10] Ms. Johnson cannot claim that her termination was causally related to the letter when she already was on notice that she might be fired.

---

[9] Unpublished cases are cited not as precedent but for the persuasiveness of their reasoning.
[10] Ms. Johnson argued that Edward Jones' proffered reason for terminating her was so thin as to evidence pretext. To the contrary, Edward Jones has provided extensive evidence demonstrating its long-running concern regarding Ms. Johnson's truthfulness while the investigation was ongoing. Furthermore, in order to satisfy her burden, Ms. Johnson would have to demonstrate not just that her termination was pretext, but that it was pretext *for retaliation*, which she has not done given that Ms. Johnson presented no facts to indicate the letter played any role in Edward Jones' decision to fire her.

## Conclusion

For the reasons stated above, Edward Jones' motion for summary judgment will be granted. A separate order follows.

__10/25/18__  
Date

__/s/ CCB__  
Catherine C. Blake  
United States District Judge